UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:22-cr-0007-GFVT-MAS-1 |
| v. ) | |
| ) | |
| BENJAMIN MICHAEL RISINGER, ) | |
| ) | |
| Defendant. ) | |

**DETENTION OPINION & ORDER**

The Indictment alleges that Defendant Benjamin Michael Risinger ("Risinger") coerced a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct in violation of 18 U.S.C. § 2251(a) on three occasions and used a means of interstate commerce (the Internet) to coerce a minor to engage in sexual activity that is otherwise a criminal offense in violation of 18 U.S.C. § 2422(b). [DE 1]. The United States orally sought detention per 18 U.S.C. 3142(f)(1)(E). [DE 7]. The Court conducted a detention hearing and afforded both sides all rights outlined in the Bail Reform Act ("BRA"). [DE 15]. Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion, the BRA requires Risinger's detention.

### I.   BRA FRAMEWORK

Given the charges, a detention presumption arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(E). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010), frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he

poses neither a flight nor a danger risk. *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence of flight risk. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's]

2

good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality, the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.

## I.   ANALYSIS

Risinger rebutted the presumption as to both nonappearance and danger risks. The Government has not shown, by a preponderance of the evidence, that Risinger presents a risk of flight or nonappearance. However, based upon the balance of BRA factors, the Court finds that the United States has demonstrated by clear and convincing evidence that no combination of conditions can adequately address Risinger's serious risk of danger to the community or reasonably assure the safety of others under the circumstances. Danger-based detention is warranted.

### A.   THE PRESUMPTION

To rebut the presumption as to flight or nonappearance, Risinger presented testimony from his aunt, Jennifer Martin, his friend, Jordan Parker, and his father, Edward Risinger. [DE 17]. All three testified to their long-standing relationships with Risinger and the strength of his good character. Risinger has lived in the central Kentucky area for almost his entire life, and currently resides with his parents and brother. He has been employed at the same company since December

2020. [Pretrial Services Report at 2]. This evidence rebuts the presumption as to flight or nonappearance risk. *See* 18 U.S.C. § 3142(g)(3)(A) (considering the defendant's record concerning court appearances and length of residence in the community).

To rebut the presumption as to danger, Risinger presented testimony from all three witnesses regarding his nonviolent, easy-going nature. Mr. Parker and Mr. Risinger testified that Risinger has been attending a church group. Mr. Risinger testified Risinger spends almost all his time at work, with his church group, or with his girlfriend. He stated he would report any bond violations to the probation office immediately. Mr. Risinger offered to be a third-party custodian for Risinger and stated that either he or his wife would be always home to supervise Risinger. Further, Mr. Risinger testified he would be willing and able to either remove all electronic devices from the home or restrict Risinger's access to them by keeping them in a locked room and password-protecting all Internet-capable devices. This evidence was sufficient to rebut the presumption as to Risinger's risk of dangerousness to the community. *Dominguez*, 783 F.2d at 707 (demanding "some evidence" the defendant is not a danger to the community in presumption cases); *Hernandez*, 2002 WL 1377911, at *2 (requiring "probative, credible evidence to rebut the presumption").

However, though rebutted, the presumption remains as a pro-detention factor in the overall analysis. *See Stone*, 608 F.3d at 945.

**B.    RISK OF FLIGHT**

The United States, considering the balance of relevant BRA factors and the conditions available, has not shown by a preponderance of the evidence that no conditions can reasonably assure that Risinger will appear in this case. The Government did not seriously argue otherwise.

There is no proof that Risinger would flee or fail to appear. The record and testimony show that he has appeared for court and not fled while on state bond for the related offenses during the past year. Risinger has no criminal history. He is not a drug user. He has strong ties to the community. He has been employed for a year and a half in IT support and could continue to work in that position if released. He has familial and community support, as evidenced by the three witnesses that testified on his behalf. *See* 18 U.S.C. § 3142(g)(3)(A) (considering the defendant's past conduct and record, employment, substance use disorder history, length of residence in the community, family ties, and history of appearances).

Considering these facts, the Court is confident that conditions such as home detention and electronic monitoring could reasonably assure Risinger's appearance at all future proceedings in this case. *See United States v. Demmler*, 523 F. Supp. 2d 677, 684 (S.D. Ohio 2007) (finding that GPS monitoring could "adequately alert law enforcement if [the defendant] attempts to flee" and concluding that "given the otherwise low likelihood of flight[,]" it would adequately safeguard against any nonappearance risk). Thus, the United States has not shown by a preponderance that no conditions can reasonably guard against flight, and detention on this basis is unwarranted.

**C.    RISK OF DANGER**

For the reasons discussed below, three of the four the BRA factors weigh in favor of finding that Risinger presents a serious risk of danger to the community. Moreover, the proposed release conditions (including release to a residence with minors) do not reasonably assure the Court that Risinger will not threaten the safety of others if released. Accordingly, the United States has proven by clear and convincing evidence that no conditions can reasonably assure community safety.

1.    **Nature and Circumstances of the Offense**

The first BRA factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a minor victim[.]" 18 U.S.C. § 3142(g)(1). The alleged offenses in this case are unquestionably among a category of offenses that Congress has deemed particularly dangerous and typically appropriate for pretrial detention. The nature of the offenses weighs in favor of detention. *See, e.g., United States v. Martinez*, 250 F.3d 1101, 1105 (7th Cir. 2001) ("[e]ngaging in sexual intercourse with a thirteen-year-old girl was a 'crime of violence'" favoring detention); *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (observing that "[d]etaining adults who prey on children for the adult's sexual gratification . . . is [ ] a legitimate government objective" justifying pretrial detention); *United States v. Demarcus Bristuan Fitzhugh*, 2016 WL 4727480, at *5 (E.D. Mich., Sept. 12, 2016) ("**Just one** sexually-related offense against **just one** minor is enough to imply dangerousness.") (emphasis in original); *United States v. Music*, No. 107-CR-21-R, 2007 WL 2067057 (W.D. Ky. July 16, 2007) (revoking an order releasing a defendant pending trial when defendant was guilty of an offense against a minor, but had no prior criminal history).

Accordingly, the first factor is strongly pro-detention.

2.    **Weight of the Evidence of Dangerousness**

The next consideration gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948.

At the detention hearing, Kentucky Attorney General Office and Secret Service Task Force Officer Matt Hedden testified that investigators became aware of Risinger when a minor ("E.Q.") and her mother reported to law enforcement that Risinger and E.Q. had engaged in sexual contact

6

on numerous occasions, beginning in 2018 when E.Q. was 14 years old. The connection between Risinger and E.Q. is through a private Christian school that E.Q. attends and Risinger graduated from some years prior where his father still serves on the board of directors. TFO Hedden testified that E.Q. reported Risinger messaged her on Instagram and Snapchat and engaged in sexual conversations with her. Among those conversations, Risinger told her he wanted to take her virginity so that she would love him. TFO Hedden stated, in his training and experience, these conversations between Risinger and E.Q. met the definition of sexual grooming of a minor. E.Q. stated that, on multiple occasions, Risinger filmed the sexual encounters and posted those videos on the website PornHub procuring over one thousand views. Law enforcement reviewed E.Q.'s cell phone and discovered photos and videos that corroborated her account of the contact she had with Risinger, such as nude photos and videos E.Q. and Risinger exchanged. TFO Hedden testified that E.Q. told him Risinger approached her friend online to solicit explicit photos, and that a group of other teenage girls reported Risinger's conduct with them to the private Christian school administrators to no discernible avail.[1]

Law enforcement executed a search warrant at Risinger's residence and seized his electronic devices. A search of these devices revealed "a number of" videos of Risinger engaged in sexual intercourse or other sexual contact with E.Q. TFO Hedden testified Risinger's cell phone contained sexually explicit conversations in which Risinger engaged in on various platforms, including Snapchat and Kik. In Risinger's Kik messages, law enforcement located videos of E.Q. that Risinger distributed to unknown third parties.

---

[1] Inexplicably, it appears from the record that the school took no action on the report from multiple students that an adult man was targeting teenage girls sexual explicit materials.

Through TFO Hedden, the United States also introduced a significant amount of conversation history obtained through a search warrant to Snapchat. The investigation revealed that Risinger had targeted countless women, not just E.Q. And like with E.Q., these conversations spanned several years with many different Snapchat users all of whom identified themselves as teenagers. In many of these conversations, Risinger sent the self-identified minor sexually explicit photos or links or requested that those individuals send him sexually explicit photos and videos. In these communications, Risinger aggressively pursued procurement of sexually explicit photos and videos from these individuals and/or meeting them for sexual encounters. In one conversation, he offered to pay for sex, and indicated that if the female had any friends, even if they were in high school, he would pay her friends for sex as well. Some of the conversations were extremely disturbing, such as Risinger's desire to sexually assault his daughter, if he ever has one in the future. And again, like with E.Q., there were references to Risinger posting these explicit images on the internet, sometimes unknowingly to the teenagers. In one case, where the teenager did know, he told her it would "be like your porn debut". In summary, TFO Hedden presented evidence demonstrating that Risinger's efforts were constant, long-standing, and overwhelming.

With this factual backdrop, the Court turns to guidance provided by jurisprudence. Per other courts, "[j]**ust one** sexually-related offense against **just one** minor is enough to imply dangerousness." *United States v. Demarcus Bristuan Fitzhugh*, 2016 WL 4727480, at *5 (E.D. Mich., Sept. 12, 2016) (emphasis in original). Here, the aggressiveness with which Risinger allegedly pursued minors, coerced them into sexual contact and/or providing him with sexually explicit content, and then shared that content online (further victimizing them) indicates that the weight of the evidence of Risinger's dangerousness is heavy, especially given the long period over

which he allegedly took up such practices. For these reasons, the second factor firmly favors Risinger's detention based on danger.

### 3. History and Characteristics of the Person

The third factor focuses on the defendant's history and characteristics. *See* 18 U.S.C. § 3142(g)(3). Current allegations aside, Risinger has nothing else in his background that implies he is dangerous. He has no criminal history other than a few speeding tickets. [Pretrial Services Report at 3-4]. The bond report reflects an individual who attended some community college, has been consistently employed in IT since leaving school, and does not abuse substances. His aunt, friend, and father all testified that he is a kind, law-abiding individual who has a significant support system. There is no evidence he has violated his state bond during the past year.

Nonetheless, even without a criminal record, courts have found the third factor as favoring detention in similar cases. *See United States v. Music*, No. 107-CR-21-R, 2007 WL 2067057 (W.D. Ky. July 16, 2007) (revoking an order releasing a defendant pending trial when defendant was guilty of violating a crime against a minor and had no prior criminal history); *see also Abad*, 350 F.3d at 798 (noting even though the defendant had no prior criminal history, "the nature of the crime charged-sexual activity with a minor-weighs heavily against release."); *United States v. Mercedes*, 254 F.3d 433, 438 (2d Cir. 2001) (reversing the decision of the district court to release the defendant even without a prior criminal record).

In this instance, the Court cannot ignore that the allegations in this case spans three years, necessarily making this alleged conduct part of his history and characteristics. Risinger is, of course, presumed innocent of these allegations at this time. However, the United States presented convincing evidence that part of his history and characteristics—a part that he has successfully hidden from his family and friends, it seems—is a prurient interest in teenage girls. Weighing this

9

fact with the positive aspects of his character, the Court finds this factor is neutral in the detention analysis.

### 4. Nature and Seriousness of the Danger

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). There is allegedly video evidence that Risinger committed third-degree rape of a child and then shared that video online. The evidence at the hearing suggested Risinger sexually assaulted one victim multiple times over the course of years, and frequently recorded these sexual encounters to later share online. The evidence further suggested that there may have been other victims with whom Risinger had sexual contact that he recorded and shared while the victim was a minor. Offenses involving actual physical contact with children present an undeniably grave danger, the seriousness of which cannot be overstated.[2] If released, children in Risinger's community could be in danger of falling victim to his alleged predatory conduct.

Even where there is no physical contact with a child, courts have found that engaging with child exploitation materials causes real, lasting harm to real victims and may warrant detention based on danger under the BRA. *See United States v. Pece*, No. 1:20-CR-186-1, 2020 WL 6263640, at *6–7 (N.D. Ohio Oct. 23, 2020) (recognizing the danger of such images because they "permanently records the victim's abuse, and [their] continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years"); *see also United*

---

[2] Risinger argued that some of the sexual encounters, as well as the "dirty talk" he allegedly engaged in on Snapchat, was not illegal conduct under Kentucky law because the age difference between Risinger and the victim did not qualify as third-degree rape under Kentucky's statutory definition. Risinger is correct in his recitation of Kentucky law. However, the charges in the Indictment are not predicated solely on the victim being under the age of consent in Kentucky. *See* Indictment at DE 1.

*States v. Kinison*, No. 5:12-CR-57-JBC-REW, 2012 WL 4433296, at *4 (E.D. Ky. Sept. 24, 2012) (finding substantial danger risk where evidence demonstrated that the defendant had "a plain, prurient interest in children" and had been handling child exploitation materials).

### 5. Availability of Mitigating Conditions

Lastly, the Court concludes that no combination of available conditions adequately guards against the danger that Defendant presents. Risinger proposes to be released to the same home where he resided when he committed the alleged offenses, raising the concern that no matter how watchful his parents may be, he can successfully hide his criminal activity from them. Mr. Risinger testified that the residence is in a neighborhood where there are minor children nearby, including in the home next door. That these children may not be the age range Risinger has prurient interest in does little to provide the reasonable safety assurances required by the BRA. Nor does the lack of any known abuse incidents during Defendant's time at the residence during state pretrial release meaningfully assuage the concern given the testimony was that he had no state bond conditions and no home visits or supervision of any kind. Based on this lack of supervision and conditions, the Court cannot make any inferences about whether or not Risinger has engaged in criminal activity while on state bond.

Additionally, Mr. Risinger testified that all of the residents at his home possess their own electronic devices. Mr. Risinger and Risinger work from home in IT, which necessitates using a computer and the Internet. The Court is not persuaded that it could adequately limit and monitor Defendant's access to the Internet and electronic devices, even if Risinger was required to quit his job, abstain from all Internet use, and be "walled off" from electronic devices through physical locks and passwords. Considering the ubiquity of data-accessible cellular and other electronic devices in the home as well as the presence of neighboring wireless internet connections, the Court

is not confident that it can sufficiently monitor and restrict Risinger's data and device access at the proposed residence. *See, e.g.*, *United States v. Foster*, No. 20-5548, 2020 WL 6791572, at *3 (6th Cir. July 20, 2020), *cert. denied*, 141 S. Ct. 1073, 208 L. Ed. 2d 533 (2021) (emphasizing the inherent difficulty in limiting and policing a child exploitation defendant's device and internet use considering modern technology).

Ultimately, in considering release to his parents' residence as proposed, the Court is not reasonably assured that it can successfully limit either Risinger's contact with minor children or his access to the internet and to electronic devices. The Government has thus shown by clear and convincing evidence that no conditions can address the serious risk of danger that Risinger presents.

## II. CONCLUSION

For the stated reasons, the Court finds that there are release conditions that can reasonably assure Risinger's appearance at future proceedings. The Court also finds, however, that the United States has shown by clear and convincing evidence that no such conditions could reasonably assure the safety of others and of the community in this case.

Accordingly, the Court **GRANTS** the United States' oral detention motion. Risinger shall remain in custody pending trial. The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 31st day of May, 2022.



Signed By:
Matthew A. Stinnett   MAS
United States Magistrate Judge